IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CASE NO. 3:26-cv-276

AMANDA WRIGHT,

      Plaintiff,

vs.

THE LINCOLN NATIONAL LIFE
INSURANCE COMPANY,

      Defendant.

COMPLAINT

Plaintiff, Amanda Wright, by and through counsel, states as his Complaint the following:

1. This action arises under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, et seq.

2. This is an action for payment of long-term disability ("LTD") insurance benefits and enforcement of ERISA rights pursuant to 29 U.S.C. §1132.

## THE PARTIES

3. Plaintiff, Amanda Wright ("Plaintiff" or "Ms. Wright"), is a citizen and resident of Charlotte, Mecklenburg County, North Carolina.

4. Upon information and belief, The Lincoln National Life Insurance Company (hereinafter, "Lincoln") is an insurance company domiciled in Indiana, and

doing business throughout the United States, including, *inter alia*, substantial activity within this judicial district.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction under ERISA with respect to Plaintiff's ERISA claims without respect to the amount in controversy or the citizenship of the parties. 29 U.S.C. § 1132(a), (e)(1) and (f) and 28 U.S.C. § 1331.

6. Plaintiff is entitled to bring this action as a Participant within the meaning of ERISA, 29 U.S.C. § 1002(7).

7. Venue is proper in this district pursuant to 29 U.S.C. § 1132(e)(2) and 28 U.S.C. § 1391(b).

## MS. WRIGHT'S DISABILITY CLAIM

8. At all times relevant to this action, Ms. Wright was employed full-time as a family law trial attorney at James, McElroy & Diehl, P.A. and worked in this judicial district.

9. Based on her employment and participation in the James, McElroy & Diehl, P.A. Plan (hereafter "Plan"), at all times relevant to this action Ms. Wright was insured under a group policy or policies providing LTD insurance benefits (hereafter "Policy").

10. On information and belief, Lincoln is the insurance company that both administers and insures all of the benefits owed to Plaintiff under the Plan and/or Policy.

2

11. On information and belief, Lincoln is solely responsible for making all benefit determinations and for paying and providing all benefits under the Plan and/or Policy from Lincoln's own funds.

12. The Policy provides that Lincoln will pay Ms. Wright a monthly disability benefit through age 65.

13. Ms. Wright experienced a traumatic brain injury, and at all times relevant to this action, suffers from debilitating symptoms including but not limited to major neurocognitive disorder and persistent post-concussion syndrome which preclude her from performing each of the main duties of her occupation.

14. Ms. Wright submitted to Lincoln voluminous evidence documenting her disability and her inability to perform the material and substantial duties of her own occupation including without limitation: medical records, statements from her treating physicians and medical providers supporting her disability and sworn testimony.

15. Ms. Wright provided credible evidence of her disability to Lincoln such that the only reasonable conclusion from all of the evidence is that she is disabled and that she is entitled to benefits under the Policy.

16. Ms. Wright timely applied for benefits under the terms of the LTD Policy.

17. By letter dated June 28, 2024, Lincoln determined that Ms. Wright was disabled from performing her own occupation under the Policy and approved her claim for benefits effective May 6, 2024.

18. By letter dated May 23, 2025, Lincoln terminated Ms. Wright's claim for LTD benefits effective May 6, 2025 contending that she was no longer disabled as of May 6, 2025. (Hereafter "May Termination" or "First Termination").

3

19. Lincoln's May Termination of benefits constituted an "adverse benefit determination" as defined by 29 C.F.R. 2560.503-1(m)(4).

20. Ms. Wright, through counsel, timely submitted a request for an appeal review of the May Termination to Lincoln on November 11, 2025.

21. By letter dated February 5, 2026, Lincoln confirmed that its May Termination decision was wrong.

22. By letter dated February 5, 2026, Lincoln confirmed that Ms. Wright remained disabled under the terms of the Policy after May 6, 2025.

23. By letter dated February 6, 2026, Lincoln confirmed that it was reversing its First Termination of Ms. Wright's LTD benefits.

24. However, also by that same letter dated February 6, 2026, Lincoln confirmed that it was *again* terminating Ms. Wright's LTD benefits beyond December 31, 2025. (Hereafter, "February Termination" or "Second Termination.")

25. Lincoln's Second Termination of benefits constituted an "adverse benefit determination" as defined by 29 C.F.R. 2560.503-1(m)(4).

26. Lincoln's Second Termination of benefits did not provide Ms. Wright with the information and/or notices required by 29 C.F.R. 2560-503-1(g) for an adverse benefit determination.

27. Lincoln's Second Termination of benefits did not provide Ms. Wright with 180 days to submit written comments, documents, records, and other information relating to the claim for benefits.

28. Rather, Lincoln's Second Termination demanded that Ms. Wright respond to the report of its record reviewing physician and provide "[any] additional written information or comments … within 21 days."

29. Lincoln did not provide Ms. Wright with the opportunity for a full and fair review of Lincoln's Second Termination.

30. Despite Lincoln's failure to comply with ERISA's claims regulations, on February 26, 2026, Ms. Wright submitted a written response to Lincoln's Second Termination.

31. Ms. Wright's February 26, 2026 response included 1,670 pages of additional records supportive of Ms. Wright's claim for ongoing disability benefits.

32. Ms. Wright's February 26, 2026 letter requested that she be provided with an appeal review of any new denial.

33. Ms. Wright's February 26, 2026 response included a letter from Ms. Wright's treating neuropsychologist, Dr. P. Jeffrey Ewert, which directly addressed and responded to the report of Lincoln's record reviewing physician sent with the Second Termination.

34. Ms. Wright also asked that Lincoln be sure to review and consider the materials in its files submitted under a prior claim in its review of her claim.

35. By letter dated March 20, 2026, Lincoln confirmed that its Second Termination decision was wrong.

36. By letter dated March 20, 2026, Lincoln confirmed that Ms. Wright remained disabled under the terms of the Policy after December 31, 2025.

37. By letter dated March 20, 2026, Lincoln confirmed that it was reversing its Second Termination of Ms. Wright's LTD benefits.

38. However, also by that same letter dated March 20, 2026, Lincoln explained that it was *again* terminating Ms. Wright's LTD benefits beyond January 7, 2026. (Hereafter, "March Termination" or "Third Termination.")

39. Lincoln's Third Termination letter confirmed that the review of Lincoln's Second Termination was conducted by the same person(s) who made the first adverse benefit determination.

40. Lincoln's Third Termination of benefits constituted an "adverse benefit determination" as defined by 29 C.F.R. 2560.503-1(m)(4).

41. Lincoln's Third Termination of benefits did not provide Ms. Wright with the information and/or notices required by 29 C.F.R. 2560-503-1(g) for an adverse benefit determination.

42. Lincoln's Third Termination of benefits did not provide Ms. Wright with 180 days to submit written comments, documents, records, and other information relating to the claim for benefits.

43. Rather, Lincoln's Third Termination demanded that Ms. Wright respond to the report of its record reviewing physician and provide "[any] additional written information or comments … within 14 days."

44. Lincoln did not provide Ms. Wright with the opportunity for a full and fair review of Lincoln's Third Termination.

## LINCOLN'S UNREASONABLE BENEFIT DETERMINATIONS

45. At all times relevant to this action, Ms. Wright has been disabled under the Policy and entitled to benefits as specified in the Policy.

46. Lincoln's adverse decision to deny Ms. Wright's benefits is grossly wrong, without basis, and contrary to the evidence before it.

47. Lincoln's adverse decision is unreasonable, is not based on substantial evidence, is not the result of a deliberate, principled reasoning process, and constitutes an erroneous determination.

48. Lincoln did not maintain reasonable claim procedures or provide a full and fair review of Ms. Wright's claim as required by ERISA.

49. Instead, Lincoln acted only in its own pecuniary interest and violated the Policy and ERISA through its unreasonable conduct described herein.

50. Lincoln had an inherent and substantial conflict of interest in administering Ms. Wright's claim, by virtue of the fact that Lincoln is both the insurer of the Policy and payor of benefits, as well as the decision maker on whether benefits should be paid.

51. Accordingly, Lincoln has a pecuniary interest in denying claims under the Policy.

52. Lincoln's pecuniary interest in denying claims under the Policy extends to Ms. Wright's claim.

53. Lincoln's unreasonable conduct includes, but is not limited to the following acts:

    a. conducting a review of Ms. Wright's claim in a manner calculated to reach the desired result of denying benefits;

    b. consulting biased medical personnel whom Defendant suspected or knew would render opinions favorable to Defendant;

    c. ignoring competent evidence of Ms. Wright's disability and without any credible contrary evidence;

    d. failing to evaluate or adequately evaluate Ms. Wright's medical conditions, restrictions and limitations;

    e. failing properly to consider and credit the records and medical opinions of Ms. Wright's treating physicians without any credible contrary evidence or medical examination of Ms. Wright;

    f. imposing requirements to receive benefits that are not required by the Policy;

    g. failing to provide Ms. Wright with the opportunity for a full and fair review.

54. Due to the facts alleged herein, Lincoln has failed to strictly adhere to the regulatory requirements applicable to the Plan.

55. Due to the facts alleged herein, Plaintiff's claim is "deemed denied."

56. Plaintiff has exhausted the administrative remedies of the Plan.

57. The Plan Administrator has not issued a valid plan document granting Lincoln discretionary authority to determine eligibility for benefits or to construe the terms of the Plan or Policy.

58. Any purported discretionary clause is void by law.

59. The Court should review Lincoln's adverse decisions on Plaintiff's claim under a *de novo* standard.

60. In the alternative, Lincoln's adverse decision on Plaintiff's claim constitutes an abuse of discretion.

## CLAIM FOR RELIEF

61. Plaintiff incorporates by reference paragraphs 1 through 60 as if fully set forth below.

62. As more fully described above, Ms. Wright has exhausted all claim review procedures and administrative remedies to the extent required.

63. As more fully described above, the conduct of Lincoln constitutes a breach of its obligations under the Policy and ERISA.

64. Ms. Wright brings this action against Lincoln pursuant to 29 U.S.C. § 1132(a)(1)(B) to recover benefits and to enforce her rights under the LTD Policy and ERISA.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays the Court:

1. hold a bench trial to determine all issues of fact;

2. enter judgment in favor of Plaintiff, finding that Ms. Wright has been entitled to LTD benefits since the date of Lincoln's denial and continuing

9

through the present, and order that Defendant shall provide all LTD and any other benefits due to Plaintiff,

3.	award Plaintiff any further relief to which she is entitled to under the Policy, ERISA and otherwise;

4.	order Defendant to pay to Plaintiff such prejudgment interest as allowed by law;

5.	order Defendant to pay Plaintiff's costs of litigation and any and all other reasonable costs and damages permitted by law;

6.	order Defendant to pay attorney's fees for Plaintiff's counsel; and

7.	order that Plaintiff shall receive such further relief against Defendant as the Court deems equitable, just and proper.

Respectfully submitted, this 6th day of April, 2026.

THE SASSER LAW FIRM, P.A.

By: /s/Rachel C. Matesic
Rachel C. Matesic
N.C. Bar No. 50156
Charles McB. Sasser
N.C. Bar No. 10027
Suite 350, 1011 E. Morehead Street
Charlotte, North Carolina 28204
Tel: (704) 342-4200
Fax: (704) 342-0798
Email: msasser@sasserlawoffice.com
Email: rmatesic@sasserlawoffice.com